Space Telescope Okay, the next case is number 14-3153, Arena against the United States Postal Service. Mr. Kuchergis. May it please the Court. Matthew Kuchergis on behalf of Petitioner Patrick Arena. Arena seeks to reverse the decision of the Merit Systems Protection Board modifying the decision of the Administrative Law Judge in sustaining the Postal Service's penalty of removal. Contrary to the Administrative Law Judge's mitigation of that penalty to a 120-day suspension. In so requesting, the Board substituted its determination for the facts deduced at the hearing from the deciding officer, Michael Bowes, wherein the Administrative Law Judge made credibility determinations regarding Mr. Bowes' testimony. Most specifically, that Mr. Bowes testified that he gave consideration to all the relevant Douglas factors. However, the Administrative Law Judge implicit in her decision was that he gave no such consideration. And it's apparent from the notice of agency action, the removal decision, and that's contained at page 82 of the record, wherein Mr. Bowes states, I've considered all of the relevant Douglas factors and I find nothing to mitigate against the charges. During AJ's decision, did she say that the deciding official didn't consider the relevant factors? Well, one, she doesn't come out and say, Bowes was, I find him to be uncredible. However. Then how can you try to catch this as a credibility? Because when you look at the record, and page 82 of the notice of decision, wherein it finds, right after he makes the pronouncement that I've considered the Douglas factors, I found nothing that would militate against the charges, I find that your lack of honesty proves to me that you cannot be rehabilitated. When you look at the ALJ's decision, and the portion of it that's relevant is page 189 to 191, the ALJ finds he appears to have good potential for rehabilitation, and that's on page 191. That doesn't have anything to do with the ALJ's credibility determination of the deciding official. That may be her own assessment of the rehabilitation potential. I mean, you're really trying hard to get a credibility determination here where there's not. I mean, assume we agree, assume we conclude that there's no credibility determination by the ALJ. The AJ, sorry. Then there's no problem with the board coming to a different conclusion on the factors there. That's the way the board operates. If there is no credibility issues with the AJ, it's a tough road to hoe for Mr. Arena. The language of this court I've seen in some opinions that in determining and trying to overturn a penalty determination by the board, this court's language and the standard of review bristles with limitation. I understand that. But in this case, where the deciding official clearly did not give consideration to the relevant Douglas factors, and I think it's implicit in the AJ's decision that they didn't, and then the board adopts the deciding official or the agency gave complete and full consideration of all the relevant Douglas factors when a contrary representation had been determined by the AJ, that this court does have the authority to review that decision. And reinstate the AJ's recommended penalty. What is the gap in the deciding official's decision on Douglas factors? I mean, it appears that Mr. Bose identifies everything in terms of depression, divorce, lost home. Then on the following page talks about how he's attending EAP. And it takes into account the length of service of this particular employee. It looks like the deciding official identified all of them, but ultimately concluded after weighing the seriousness of the offense and the fact that Mr. Arena failed to cooperate with the investigation that these potential mitigating factors ultimately don't warrant mitigating the penalty. Well, with an 18-year veteran of the service with no prior disciplinary history, and I don't believe the deciding official touches upon that, but even in his own decision where he says... He talks about length of service. He talks about length of service, but he doesn't talk about his absence of any disciplinary record. But he says, I found nothing that would militate against the charges. I find it incredible that he can weigh these factors, he articulates them in the letter, but he finds nothing to mitigate. It's not that I balance these and unbalance the seriousness of the offense warrants the termination. It's rather he gives lip service to considering, but clearly he did not. But the problem for both the board and this court is we're very limited in reviewing the discretion of this deciding official on trying to cast what's an appropriate penalty here. That was what the board was pointing at when it ultimately concluded that this particular A.J. was substituting her judgment for that of the deciding official. And the way by which this court can review that decision is the way that the A.J. determined, that if the deciding official does not give appropriate consideration to all the relevant Douglas factors, the A.J. and the board can substitute their judgment and institute a penalty within the maximum defense charge. That's what happens here, though. I mean, the A.J. looked at that and said, the removal is more than a maximum reasonable penalty and mitigate it. And the board looked at it as it's entitled to do and said, nope, we agree, the removal is within the boundaries. But they did so based upon the finding in the record on the note of decision at page seven that the official properly considered the mitigating factors. And it's clear from the record, from his letter of decision and testimony that he didn't consider. He gave consideration only to the nature of the offense and the risk that it posed on other employees. He didn't give any consideration to the other relevant Douglas factors. If you look at the record at the hearing... Do you think our case on the board case law requires a mechanical listing of all the Douglas factors and basically a checklist of this one mitigates, this one doesn't? No, it doesn't. Don't we have to read his decision letter holistically and see that it looks like he did consider his length of service. He considered other things and he found nothing else that would militate it against. And those other, when he references nothing to militate, don't we presume implicitly that he considered those other things? If he considered those other things, how could he find nothing to mitigate the charges? Nothing. Nothing. Well, he thinks that they're not enough to reduce it to a removal. That's not what he stated. In his letter of decision, he states, I find nothing to... It sounds to me like you're kind of nitpicking about his specific language in the letter or not, what he actually was doing. Well, I don't know that I'd characterize it as nitpicking even when he testified at the hearing. When he testified about the basis of his decision, it was solely based on the seriousness and the nature of the offense. All of the other mitigating Douglas factors had to be discussed in cross and drawn out of them. And then the board latches onto what he had to say on cross to find, oh, he gave consideration to the relevant Douglas factors. Which factor would you emphasize? I gather it's the potential for rehabilitation... That's one. ...rather than mitigation of the seriousness. The length of time that he had in the service, 18 years. The fact that during that 18 years, he had an unblemished disciplinary history. During that 18 years, he was a trustworthy, valuable, and good employee to the service. And there was absolutely no consideration given to that. And I understand Your Honor's characterization... But both the A.J. and the board looked at those issues and they considered them and they determined that even considering those, removal, at least the board removal, was not beyond a maximum reasonable penalty. That was the board's decision, finding that the agency gave appropriate weight and consideration to the relevant Douglas factors, which was contrary to the administrative judge's finding, that they did not. That's the basis by which she mitigated the penalty to 120-day suspension. So I understand the question of the court, but the board's decision upholding the removal penalty was premised upon a deciding official giving those factors consideration and weight, and he did not. And because he did not, the board and this court can review that decision to impose what would be the appropriate maximum penalty under the circumstances. Would that be our rule? Or would our rule be to vacate the deciding official's decision to go back and do what you would regard as a more adequate analysis, a more complete analysis of all the factors? I don't think so, because I think that analysis has already been engaged in by the administrative judge. She undertook to re-weigh the relevant Douglas factors on her own and determined that the maximum reasonable penalty was that of 120-day suspension. Her analysis seemed to be predicated on a misunderstanding of the facts. As I understand it, she believed that the agency's view of the seriousness of the offense could not be credible because they had left Mr. Arena on the job for several months knowing that he was using drugs on duty, whereas the facts are actually that Mr. Bose did not know and did not hear anything from OIG until the actual day of Mr. Arena's removal from the job on August 27th. With respect to that, I think what the A.J. was stating was that the testimony of Mr. Bose about the significant harm that could occur in the workplace as a result of this conduct is somewhat belied by the fact that the OIG sat on this investigation for six months. But that presumes that OIG is at all interested in the personnel issue. From all respects, it seems like OIG was more interested, if it could, in pursuing a criminal case. Well, it's interesting that you point that out, Your Honor, because when they first come in and try to interview Arena, he invokes his Fifth Amendment privilege. It then advises the supervisor that it's not going to pursue a criminal matter, and we get into the Kalkine's warnings and the Gibbons memorandum. However, I think it's interesting that OIG continues to conduct the interviews. They don't wash their hands of it and say, this is a personnel matter. Step in with the fruits of our labor. They come in and continue to pressure Arena in the attempt to have him submit to an interview. So I don't know if they are interested solely in a criminal matter because they're being utilized by management. We had no idea what OIG was doing here. Maybe they were looking for broad-reaching use of drugs in the workplace. Maybe they were thinking somebody was dealing on the premises. But the fact is, the manager in charge of disciplining this man testified that he didn't know of the results of the investigation and, therefore, couldn't have done anything about it until the day he removed him. I concede that's what he testified to. Let's hear from the government. Mr. Farrarder. Good morning. May it please the Court. The only issue that's before this Court in this appeal is whether the removal penalty that was imposed by the Postal Service should be sustained. Under the governing standards, the Court must defer to the agency's choice of penalty. The question isn't whether this Court would have imposed the same penalty or not. Even whether the penalty that was imposed by the agency was the most effective. The Court can only overturn or upset that penalty if it was, in the Court's own language, outrageously disproportionate or so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion. Here, Mr. Arena was charged with three different offenses. The first was improper conduct based on his long history of using illegal drugs on the job. The second was the charge for failing to stay gainfully employed based on the fact that he was taking multiple, in some cases hours long, unauthorized breaks in an abandoned warehouse. And the third was the failure to cooperate in the postal investigation. Based not only on his refusal to speak to the OIG agents about the drug use, but also his outright lying to his supervisor on the one occasion when he did actually address his drug use. The agency outright lied about it multiple times. Mr. Arena denied all three of those charges up until the eve of his AEJ Administrative Judge hearing, at which point he finally conceded the first two, but he continued to deny the charge for failing to cooperate in the investigation. The Administrative Judge found that the agency had met its burden, had proved that charge because there was no plausible or reasonable basis for Mr. Arena to have continued to refuse to talk about his drug use once he was given the Kalkine's warnings, the use immunity on several occasions. Mr. Arena did not appeal that finding to the full board, and so at this point all three of the charges have been conceded. And again, we're only talking about the penalty. Now, the only evidence in the case from the deciding official, Mr. Boas, was that he considered all of the Douglas factors, all of the relevant Douglas factors that were potentially applicable to the facts of this case. He testified at the hearing before the Administrative Judge at great length about the factors that he considered and how he came to the result that he came to. In addition, the deciding official met with Mr. Arena before he was discharged and gave him the opportunity to offer any evidence he had to address the situation or any mitigating evidence that might support a lesser penalty. At that time, Mr. Arena didn't offer any evidence. The only potential mitigating factors that he identified were his length of service, the fact that he had apparently undergone a divorce recently and he alleged he had been diagnosed with depression, and the fact that he had made a phone call after the fact to the employee assistance program. Again, no evidence was offered either to the deciding official or at the hearing to support that there was any causal connection between the divorce or the alleged depression and the fact that he was using drugs on the job, according to his co-worker, up to four times a month for an entire year. And that's why the full board found that, regardless of those allegations, there was no supporting evidence and so they couldn't support mitigating the removal penalty that was imposed by the agency. The only factors that Mr. Arena did offer, again, his length of service, the EAP, those, in fact, were cited in the deciding official's termination letter. They were cited as factors that were considered and Mr. Bowes testified at the hearing that he gave, in his words, significant weight to the length of Mr. Arena's employment and the lack of any discipline. In fact, Mr. Arena has admitted in his brief, page 11, that the deciding official acknowledged that Arena was attending the EAP and his length of service. So what Arena is really challenging in this case is the way in which the agency weighed the different Douglas factors. And essentially, Mr. Arena is asking the court to weigh those factors anew without giving any deference either to the board or to the agency. And that's obviously improper under the court's case law. The agency here was fully entitled to rely upon the long history of Mr. Arena's lack of cooperation. Initially, when he was approached by the OIG agents in August 2012, he refused to talk and at that point, the documents in the record show that he was given a written copy of the CalKinds warnings and asked to discuss those with his counsel and contact the agents again within four days. He never did so. When the OIG agents approached him again in early September 2012, they orally gave him those CalKinds warnings again. He was read a memorandum from his supervisor that directed him to cooperate with the agency now that he'd been given use immunity or faced the penalty of potential removal. Again, he refused to talk. When he met with his supervisor later in September, that was the one occasion where he actually would address his drug use and in doing so, he flat out lied about it on multiple occasions. If you look at the supervisor's notes, he was asked multiple times, were you using drugs on the job? He said, no, no, no, many times. In fact, he said he was smoking flowers in the warehouse when he was caught on surveillance. After that, when he eventually met with the deciding official, again, he refused to discuss his drug use at that time. The agency and in turn, the board, under the court's case law, were fully entitled to weigh Mr. Arena's lack of cooperation in determining the appropriate penalty in this case. Finally, the penalty that was imposed here, removal, is fully commensurate with punishments that have been imposed for similar offenses. The two other co-workers who also were implicated in the same operation were also both terminated. Now, Mr. Arena points out that one of those workers, Mr. Marquardt, had a prior instance of discipline, which of course Mr. Arena did not. However, balancing against that, Mr. Marquardt fully cooperated in the investigation and signed an affidavit under oath admitting to the charges, whereas Mr. Arena did not do so in any way. The other co-worker, Mr. Leonard, who also was discharged, he had no prior history of discipline that was considered as part of the Douglas analysis, and yet he was also discharged as well. And finally, Mr. Bowes testified that he looked at any instances he could find at this facility in the Postal Service where there were other drug charges, and the only instances he could find all involved removal as well. Mr. Arena argues that those may have involved harder core drugs, cocaine or selling drugs on the property, whereas this was just the use of drugs. But again, those were the only instances that the deciding official could find, and they all resulted in removal. And at no time did Mr. Arena offer any evidence of any other drug charges for employees in the Postal Service where lesser penalties other than removal were imposed. And finally, the Court's case law also is clear that there have been many cases where the Court has upheld removal of employees who engaged in a one-time, one-off use of illegal drugs off government property on their off-duty hours, and even in those cases, removal was upheld. Here you had an ongoing pattern for many months of actual drug use on the job, on the clock, so clearly the removal penalty is appropriate under those circumstances as well. And finally, again, it's important to remember that Mr. Arena was charged not only with illegal drug use, but also with failing to cooperate and failing to stay gainfully employed based on his unauthorized breaks. And we've cited cases in our papers where this Court has upheld removals based on those charges alone without the accompanying illegal drug use. So when you combine all those together under these circumstances, it would be impossible for the Court to say that the agency's decision to remove, as upheld by the Board, was grossly disproportionate to the facts of the case. Okay. Thank you, Mr. Peratti. Mr. Kucheridis. And I don't mean to condone drug use on the job by any means, but I think the agency over-exaggerates the extent of Mr. Arena's involvement. It had mentioned a pattern of drug use over many months, the hearsay statement of the other employee that was terminated, but when you look at the OIG report on page 28 in the record, it identifies two dates where this had occurred. So I think that's somewhat exaggerated. As I said, I don't condone the use of drug use on the job. But taking all of that into account, when you look at the other co-workers, the one gentleman had a disciplinary history, Marquardt. The other gentleman, Leonard, although he didn't have an active disciplinary history and it wasn't considered by the board, had a complete failure to cooperate. Unlike Arena, who went in and submitted to a drug test, Leonard basically washed his hands of the whole thing, I'm not cooperating at all. So the alleged failure to cooperate was making an incriminatory admission confession to OIG or his supervisors. In all other respects, Arena cooperated with the investigation. And so I think he's differently situated than the two other co-workers in those respects. In conclusion, I think because the board erred in finding that the deciding official gave considerable weight to the relevant Douglas factors, that the board erred in taking that position when a contrary position had been determined by the AJ. And for that reason, I would request that the court reverse the decision of the board and reinstate the penalty recommended by the AJ, a 120-day suspension. Okay, thank you, Mr. Kuchergis. The case is taken under submission.